COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


CARNEAL CREWE, S/K/A
 CARNEAL COSELLE CREWE
                                    MEMORANDUM OPINION[*] BY
v.  Record No. 2709-95-2           JUDGE JAMES W. BENTON, JR.
                                         OCTOBER 29, 1996
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CHARLES CITY COUNTY
                 Samuel Taylor Powell, III, Judge

          Michael C. Tillotson for appellant.

          Kimberley A. Whittle, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Sitting without a jury, the circuit court judge convicted

Carneal Crewe of brandishing a firearm in violation of Code

§ 18.2-282.  Crewe contends that the evidence was insufficient to

convict him of the offense.  We agree and reverse the conviction.

     The essential facts are undisputed.  The evidence proved

that Amanda Barneycastle and Crewe were dating.  On the afternoon

of August 8, 1995, while Barneycastle was visiting Crewe at his

residence, they began to argue.  During the argument, Crewe

removed Barneycastle's keys from her car and temporarily disabled

the telephone to the residence.  Barneycastle, who lived a five

minutes' walking distance away, did not leave the residence.

     During the argument, Barneycastle and Crewe hit each other.

 Barneycastle could not recall who began the physical

_____
          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

altercation, but she did testify that Crewe disengaged from the fighting and left her in his bedroom. Barneycastle testified that she tried to call her parents on the telephone but could not.

Crewe testified that after he disengaged from the argument, Barneycastle remained in his room talking to his cousin. Crewe went into his brother's bedroom and closed the door to allow Barneycastle and himself to calm their emotions. He testified that he believed that he closed the door when he entered the room. After he entered the room, he "fondl[ed] around with stuff" for three or four minutes and picked up one of several guns placed beside his brother's bed. Crewe testified that he had no specific intent to get a weapon and testified that he had a rifle and other weapons in his own room.

Later, Barneycastle walked by Crewe's brother's bedroom. She looked into the room through the door that was slightly ajar and saw Crewe holding a gun. She opened the door, rushed toward him to take the gun away, and struggled with him for the gun. During her attempt to wrestle the gun away, the barrel was pushed to her stomach. When Crewe retained control of the gun, he placed it in the corner of the room and left the room with Barneycastle.

> Code § 18.2-282(A) provides, in pertinent part, as follows:
> It shall be unlawful for any person to point, hold or brandish any firearm, as hereinafter described, or any object similar in appearance to a firearm, whether capable of being fired or not, in such manner as to

> reasonably induce fear in the mind of another
> or hold a firearm in a public place in such a
> manner as to reasonably induce fear in the
> mind of another of being shot or injured.
> However, this section shall not apply to any
> person engaged in excusable or justifiable
> self-defense.

In Kelsoe v. Commonwealth, 226 Va. 197, 198, 308 S.E.2d 104, 104 (1983), the Supreme Court stated that "[t]here are two elements of the offense: (1) pointing [, holding,] or brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim." In this case, the Commonwealth proved that Crewe was holding a firearm. However, the evidence is insufficient to support a finding that Crewe did so "in such a manner as to reasonably induce fear" in Barneycastle. Code § 18.2-282(A).

Both Barneycastle and Crewe testified that Crewe disengaged from the fighting and left Barneycastle in his room. When Crewe went to his brother's room, Barneycastle went to the telephone to call her parents to come for her. Although Barneycastle remained in the residence, she did not testify that she was restrained in any manner. Indeed, she testified that the fighting had ceased.

Barneycastle testified that when she walked by the brother's bedroom she could see into the bedroom. However, her testimony proved that the door was almost shut. Only by conjecture could the trier of fact conclude that Crewe was aware that he could have been seen as he held the gun. The evidence proved that Crewe was in the bedroom with the door virtually shut and was not

pointing or brandishing the gun toward any person.  Barneycastle testified that when she peered into the room, Crewe "was pointing [the gun] straight up."

Barneycastle's own testimony proved that the gun was only pointed toward her during the struggle that she initiated to gain control of the gun.  Crewe made no threats when she grabbed the gun.  Furthermore, no evidence proved that Crewe intentionally pointed the gun at her.  Barneycastle said her "first reaction was to grab the gun" because she did not know why Crewe had it.

The elements of the statute are not proved beyond a reasonable doubt when the evidence merely proved that a person holding a firearm was inadvertently seen by another.  Thus, the evidence did not prove beyond a reasonable doubt that Crewe held the gun "in such a manner as to reasonably induce fear in the mind of another."  Code § 18.2-282(A).

For these reasons, we reverse the conviction and dismiss the charge.

<u>Reversed</u>.